IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STERIGENICS U.S., LLC, <br> 2050 Spring Road, Suite 650 <br> Oak Brook, IL 60523, <br> <br> Plaintiff, <br> <br> v. <br> <br> NATIONAL UNION FIRE INSURANCE <br> COMPANY OF PITTSBURGH, PA, <br> 175 Water Street <br> 18th Floor <br> New York, NY 10038, <br> <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. <br> <br> JUDGE <br> <br> **COMPLAINT** <br> <br> **(DEMAND FOR JURY TRIAL)** |

Plaintiff, Sterigenics U.S., LLC ("Sterigenics U.S."), states as follows for its Complaint against Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"):

**NATURE OF THE CASE**

1. This is an insurance coverage dispute.

2. Sterigenics U.S. is owed defense and indemnity coverage for hundreds of pending bodily injury lawsuits, which for purposes of discovery have been consolidated and captioned *Susan Kamuda, et al. v. Sterigenics U.S., LLC, et al.*, Circuit Court of Cook County, Illinois Consolidated Case No. 18 L 10475 (the "Underlying Litigation") under two commercial general liability insurance policies issued by National Union to, among other insureds, Sterigenics U.S.'s predecessor.

3. National Union improperly denied coverage for the Underlying Litigation on two erroneous bases: (1) Sterigenics U.S. purportedly does not qualify as an insured under the National Union policies; and (2) the pollution exclusion in the National Union policies.

4. As further detailed below, neither of these are accurate nor legitimate bases for denying coverage.

5. Regarding the insured status issue, Sterigenics U.S. is the clear successor by merger to Micro-Biotrol Company, an entity that qualifies as a named insured under the plain language of the subject National Union insurance policies. As a matter of Illinois law, a successor by merger, such as Sterigenics U.S. in this instance, succeeds to the insurance rights of the non-surviving merged entity. This approach by Illinois makes common sense, because a successor by merger likewise succeeds to the non-surviving merged entity's liabilities.

6. Regarding the pollution exclusion issue, National Union is wrong for at least two reasons. First, as a matter of Illinois law — which governs this dispute — Illinois courts have established a common-law doctrine holding that a pollution exclusion such as that relied on by National Union does not apply when, as here, the alleged discharges or emissions constituting the pollution were made pursuant to a lawfully valid permit. The allegations in the Underlying Litigation make plain that the alleged emissions causing the plaintiffs' alleged harm during the National Union policy periods were made pursuant to lawfully valid permits. Second, not only does that Illinois common-law doctrine govern, but the pollution exclusion in the subject policies contains a "sudden and accidental" exception that negates any potential applicability of the exclusion anyway. Indeed, Illinois courts have held that a sudden and accidental exception such as this is ambiguous and construed against the insurer and in favor of the insured such that the

exception to the exclusion applies whenever the alleged harmful discharge is unintendedly or unexpectedly harmful — even if the alleged discharges occurred over several years.

7. Although Sterigenics U.S. sought to persuade National Union to accept these positions and acknowledge and accept its duty to defend and indemnify Sterigenics U.S. against the Underlying Litigation, National Union declined.

8. Consequently, Sterigenics U.S. brings this action for declaratory judgment and money damages.

## PARTIES, JURISDICTION, AND VENUE

9. National Union is a corporation organized under the laws of Pennsylvania with its principal place of business in New York.

10. Sterigenics U.S. is a limited liability company organized under the laws of Delaware. Sterigenics U.S.'s sole member is Sotera Health LLC, which is a limited liability company organized under the laws of Delaware. Sotera Health LLC's sole member is Sotera Health Holdings, LLC, which is a limited liability company organized under the laws of Delaware. Sotera Health Holdings, LLC's sole member is Sotera Health Company, which is a corporation organized under the laws of Delaware with its principal place of business in Ohio. None of Sterigenics U.S.'s members is a citizen of New York or Pennsylvania.

11. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of property that is the subject of this action is situated in this district and National Union is otherwise subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### A. The Underlying Litigation.

13. In 2018, the first lawsuit in the Underlying Litigation was filed against, among several other defendants, Sterigenics U.S.

14. The plaintiffs in the Underlying Litigation generally allege that they suffered bodily injuries as a result of exposure to discharges of ethylene oxide ("EtO") from a sterilization facility in Willowbrook, Illinois currently owned by Sterigenics U.S. A true, accurate, and authentic copy of the currently operative Fourth Amended Master Complaint in the *Kamuda* lawsuit in the Underlying Litigation is attached as **Ex. A**.[1]

15. Sterigenics U.S. denied — and denies — liability to the plaintiffs in the Underlying Litigation.

16. In addition to Sterigenics U.S. and others, the plaintiffs named as a defendant in the Fourth Amended Master Complaint an entity now known as Griffith Foods International, Inc., which was formerly known as Griffith Laboratories U.S.A., Inc.

### B. The relevant insurance policies.

17. As relevant to this action, National Union issued two commercial general liability policies to two named insureds that were then known as Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc.:

---

[1] As noted above, hundreds of plaintiffs filed actions similar to *Kamuda* against Sterigenics U.S. and others, and Sterigenics U.S. seeks in this action defense and indemnity coverage from National Union for each such plaintiff's claims. All of these plaintiffs' claims were consolidated for pretrial and discovery purposes with the first-filed *Kamuda* lawsuit, and the operative allegations as to each plaintiff for purposes of insurance coverage are contained in the operative Master Complaint attached here. For ease of reference, Sterigenics U.S. refers to these consolidated cases as the Underlying Litigation. But for the avoidance of doubt, Sterigenics U.S. seeks defense and indemnity coverage as to each of these plaintiffs' claims and lawsuits.

| Policy Number | Policy Period | Policy Limits |
|---|---|---|
| GLA-945-70-58RA | 9/30/83-9/30/84 | $1 million per occurrence and in the aggregate; Defense in addition to limits |
| GLA-194-00-11RA | 9/30/84-9/30/85 | $1 million per occurrence and in the aggregate; Defense in addition to limits |

Collectively, the insurance policies in the above table are referenced herein as the "Policies."[2]

18. The Policies each contain an endorsement providing that the term "Named Insured" under the policy means:

> [T]he organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded and *[sic]* newly acquired or formed company shall terminate within sixty days of its acquisition of *[sic]* formation unless reported to the company within said sixty days."

19. In similar fashion, Section XII of the Policies sets forth a newly acquired organizations provision providing as follows:

> **XII. AUTOMATIC COVERAGE—NEWLY ACQUIRED ORGANIZATIONS**

---

[2] Sterigenics U.S. does not attach the Policies to this Complaint because the copies of the Policies in Sterigenics U.S.'s possession were produced pursuant to a protective order in the Underlying Litigation and because National Union already has copies of the Policies. Sterigenics U.S. will provide the Policies in its possession upon request and in accordance with an appropriate sealing order or, alternatively, National Union could be directed to file copies not subject to the underlying protective order.

> The word **insured** shall include as **named insured** any organization which is acquired or formed by the **named insured** and over which the **named insured** maintains ownership or majority interest, other than a joint venture, provided this insurance does not apply to **bodily injury**, **property damage**, **personal injury**, or **advertising injury** with respect to which such new organization under this policy is also an **insured** under any other similar liability or indemnity policy or would be an **insured** under any such policy but for exhaustion of its limits of liability. The insurance afforded hereby shall terminate 90 days from the date any such organization is acquired or formed by the **named insured**.

**C.     Sterigenics U.S. is an insured under the Policies.**

20.     Item 1 of the Policies' declarations pages identifies Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. as named insureds. Consequently, any subsidiary of those two entities, as well as any other company acquired or formed by them during the policy period and over which either of them maintains ownership, financial control, and/or a majority interest, qualifies as an insured under the above-referenced endorsement and Section XII in the Policies.

21.     The operative Fourth Amended Master Complaint in the *Kamuda* lawsuit of the Underlying Litigation alleges that on April 12, 1984, the then-unincorporated division of Griffith Laboratories U.S.A., Inc. — known as Micro-Biotrol Co. — leased the facility in Willowbrook, Illinois at the center of the plaintiffs' claims and operated the facility at all relevant times during the Policies' periods.

22.     Around October 4, 1984, the entity then known as Griffith Laboratories U.S.A., Inc., a Named Insured under the Policies, incorporated Micro-Biotrol Company by filing a Certificate of Incorporation with the Delaware Secretary of State. A true, accurate, and authentic copy of the Certificate of Incorporation of Micro-Biotrol Company is attached as **Ex. B**.

23. As reflected in the Deed, Assignment, and Bill of Sale dated October 4, 1984 attached as **Ex. C** and Assumption of Obligations and Liabilities dated October 4, 1984 attached as **Ex. D**, Griffith Laboratories U.S.A., Inc. contributed and transferred many of the assets used in the gas sterilization business which had previously been conducted by Griffith Laboratories U.S.A., Inc.'s Micro-Biotrol Co. division to its wholly-owned subsidiary, Micro-Biotrol Company. The transfer included the lease and assets related to the Willowbrook, Illinois sterilization facility.

24. At all relevant times during the Policies' periods, Griffith Laboratories U.S.A., Inc. was Micro-Biotrol Company's direct parent and Micro-Biotrol Company was Griffith Laboratories U.S.A., Inc.'s wholly-owned subsidiary. Moreover, Micro-Biotrol Company was not an insured under any other liability or indemnity policy. So, under the plain language of the Policies, Micro-Biotrol Company is a Named Insured.

25. The Fourth Amended Master Complaint in the *Kamuda* lawsuit of the Underlying Litigation alleges that from April 1984 to April 1999, Micro-Biotrol and its successor entities "operated" the Willowbrook facility, including during the Policies' periods. *See, e.g.*, 4th Am. Master Compl. ¶ 23. Accordingly, Micro-Biotrol Company — or its successor by merger, which, as detailed below, is Sterigenics U.S. — is entitled to defense and indemnity coverage under the Policies.

26. For ease of understanding the path by which Sterigenics U.S. ultimately became the successor by merger to Micro-Biotrol Company and the owner of Micro-Biotrol Company's insurance rights under the Policies, Sterigenics U.S. notes that Micro-Biotrol Company underwent several name changes over the years. On October 16, 1984, Micro-Biotrol Company filed a Certificate of Amendment to change its name to Micro-Biotrol, Inc. On July 11, 1986,

7

Micro-Biotrol, Inc. filed a Certificate of Amendment to change its name to Griffith Micro Science, Inc. On December 18, 2002, Griffith Micro Science, Inc. filed a Certificate of Amendment to change its name to IBA S&I, Inc. On July 7, 2004, IBA S&I, Inc. filed a Certificate of Amendment to change its name to Sterigenics EO, Inc. Importantly, each of these name changes was merely that: a name change. True, accurate, and authentic copies of charter documents from the Delaware Secretary of State tracing this corporate history are attached as **Exs. E through H**.

27. In 1994, Griffith Laboratories Worldwide, Inc.(f/k/a Griffith Laboratories U.S.A., Inc.), the then-common parent of Griffith Micro Science, Inc. (f/k/a Micro-Biotrol Company) and Griffith Micro Science International, Inc., contributed its ownership interest in Griffith Micro Science, Inc. to Griffith Micro Science International, Inc., resulting in Griffith Micro Science, Inc. becoming a direct subsidiary of Griffith Micro Science International, Inc. and an indirect subsidiary of Griffith Laboratories Worldwide, Inc. A true, accurate, and authentic copy of certain 1994 stock transfer documentation is attached as **Ex. I**. In addition, the stock of Griffith Micro Science, Inc.'s parent companies was sold in certain subsequent transactions.

28. Any change in ownership of the stock of Micro-Biotrol Company or its parent company did not transfer or affect Micro-Biotrol Company's legal rights, including its contract and insurance rights. *See, e.g.*, *Texaco Refining and Mktg., Inc. v. Del. River Basin Comm'n*, 824 F. Supp. 500, 507 (D. Del. 1993) ("A sale of all of the stock of a corporation, or of a controlling interest, is not a sale of the physical properties or assets of the corporation… The purchaser holds shares in the corporation, but has no right to the assets, rights, and privileges of the corporation."). Indeed, Micro-Biotrol Company's contract and insurance rights remained with Micro-Biotrol Company until they were assumed by Sterigenics U.S. in the below-detailed

8

December 2005 mergers, which resulted in Micro-Biotrol Company being merged into Sterigenics U.S.

29. Sterigenics U.S. became the successor to Micro-Biotrol Company via two December 2005 merger transactions. Effective December 1, 2005 at 12:03 a.m. Eastern Standard Time, the entity then known as Sterigenics EO, Inc. (and originally known as Micro-Biotrol Company) was merged into its then-direct parent, Sterigenics S&I Holding, Corp. (previously known as Griffith Micro Science International, Inc.), with Sterigenics S&I Holding, Corp. as the surviving corporation of the merger. Then, effective December 1, 2005 at 12:04 a.m. Eastern Standard Time, Sterigenics S&I Holding Corp. was merged into Sterigenics U.S., with Sterigenics U.S. as the surviving entity of the merger. True, accurate, and genuine copies of the relevant merger documents are attached as **Exs. J through M**.

30. Pursuant to Delaware law (the state in which the mergers occurred), Section 2 of each Agreement and Plan of Merger for these transactions provides that "at the Effective Time, the separate corporate existence of [the non-surviving merged entity] shall cease; the corporate identity, existence, powers, rights and immunities of… the Surviving Entity shall continue unimpaired by the Merger; and [the Surviving Entity] shall succeed to and shall possess all the assets, properties, rights, privileges, powers, franchises, immunities and purposes, and be subject to all the debts, liabilities, obligations, restrictions and duties of [the non-surviving merged entity], all without further act or deed." *See* **Exs. K and M**, § 2.

31. The following timeline visually recaps the foregoing succession of name changes and mergers ultimately tracing up to Sterigenics U.S.:

| Filing Date | Event |
|---|---|
| 10/16/84 | Micro-Biotrol Company changes name to Micro-Biotrol Inc. |
| 7/11/86 | Micro-Biotrol Inc. changes name to Griffith Micro Science, Inc. |
| 12/18/02 | Griffith Micro Science, Inc. changes name to IBA S&I, Inc. |
| 7/7/04 | IBA S&I, Inc. changes name to Sterigenics EO, Inc. |
| 12/1/05, effective at 12:03 a.m. Eastern | Sterigenics EO, Inc. merged into Sterigenics S&I Holding Corp. |
| 12/1/05, effective at 12:04 a.m. Eastern | Sterigenics S&I Holding Corp. merged into Sterigenics U.S. |

32. In Illinois, it is well-settled that in the context of statutory mergers, the surviving entity — Sterigenics U.S. — inherits the predecessor entity's rights to insurance benefits for pre-merger occurrences.[3] This makes sense because under Illinois law, the surviving entity in a merger assumes all obligations and liabilities of the non-surviving merged entity. *Gray v. Mundelein Coll.*, 695 N.E.2d 1379, 1388 (Ill. Ct. App. 1998); *Myers v. Putzmeister, Inc.,* 596 N.E.2d 754, 755 (Ill. Ct. App. 1992); *Ill. Ins. Guar. Fund v. Priority Transp., Inc.*, 146 N.E.3d 155, 171 (Ill. Ct App. 2019).

33. "In fact, the assumption of liabilities is often considered to be the distinguishing factor between a merger and an asset purchase agreement." *Knoll Pharm. Co. v. Auto. Ins. Co.*,

---

[3] Illinois law applies to the interpretation of the Policies because, among other things, the named insureds were domiciled in Illinois, the insured risks were located in Illinois, and the Policies were delivered in Illinois. *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*, 743 N.E.2d 629, 639-40 (Ill. Ct. App. 2001). In any event, Delaware, the state in which the relevant mergers occurred, likewise provides that "the surviving entity of a merger absorbs all rights and responsibilities of the parties to a merger," including the non-surviving merged entity's contract rights. *Cornell Univ. v. Illumina, Inc.*, No. 10–433–LPS–MPT, 2013 WL 3216087, at *12 (D. Del. June 25, 2013); *Texaco Refining and Mktg., Inc.*, 824 F. Supp. at 507 ("A statutory merger… results in a combination of the two corporations with the surviving corporation attaining the property, rights, and privileges of the absorbed corporation, as well as retaining its own property, rights, and privileges."); *P.C. Connection, Inc. v. Synygy Ltd.*, No. 2020-0869-JTL, 2021 WL 57016, at *15 (Del. Ch. Jan. 7, 2021) ("As a result of the merger, any contractual rights and obligations that [the non-surviving merged entity] possessed under [its contracts] survived as contractual rights and obligations of the [surviving entity of the merger].").

167 F. Supp. 2d 1004, 1010 (N.D. Ill. 2001) (citing *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1425 (7th Cir. 1993)). Consequently, and by the same token, the surviving entity in a merger succeeds not only to the liabilities and obligations of the non-surviving merged entity, but also to the non-surviving merged entity's contractual rights, including insurance policy rights. *Knoll*, 167 F. Supp. 2d at 1010-11.

34. Therefore, as the successor by merger to Micro-Biotrol Company, Sterigenics U.S. is the successor to Micro-Biotrol Company's rights under the Policies.

**D. The Policies' pollution exclusion does not apply here.**

35. The Policies contain a pollution exclusion, which provides as follows:

This insurance does not apply:

\*\*\*

(f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* Policies, § 1(f) (the "Pollution Exclusion").

36. This "standard pollution exclusion provision contains two parts: (1) the insurer excludes coverage for the release of environmentally toxic materials into any part of our natural environment and (2) the insurer makes an exception from this broad exclusion for toxic releases which are sudden and accidental. In other words, the pollution exclusion exception reinstates coverage for toxic releases which are sudden and accidental." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1217 (Ill. 1992).

37. As discussed above, Illinois courts have established a common-law doctrine holding that this "standard" Pollution Exclusion is set aside when the emissions are made pursuant to a lawfully issued permit.

38. Consequently, when the allegations in the underlying claim are that at least some of the alleged emissions were made pursuant to a lawfully issued permit, the exclusion is not triggered, and the insurer is obligated to defend. *See, e.g.*, *Erie Ins. Exch. v. Imperial Marble Corp.*, 957 N.E.2d 1214, 1219-21 (Ill. Ct. App. 2011); *Country Mut. Ins. Co. v. Bible Pork, Inc.*, 42 N.E.3d 958 (Ill. Ct. App. 2015).

39. So too here. As alleged in the Fourth Amended Master Complaint, the Willowbrook Facility was operated during the Policies' periods pursuant to a Joint Construction and Operating Permit issued by the Illinois Environmental Protection Agency ("IEPA"). *See, e.g.*, 4th Am. Master Compl. ¶¶ 57, 58, 60, 62, 109, 277. Thus, the plaintiffs in the Underlying Litigation allege, at least in part, that their alleged injuries were the result of the Willowbrook Facility's operators' normal business operations pursuant to the lawfully issued IEPA permit. *See, e.g.*, *id.* at ¶¶ 58, 60, 62, 277-78.

40. Indeed, Counts 12-14 of the Fourth Amended Master Complaint allege that certain injuries occurred during the Policies' periods because of lawfully permitted operations at the Willowbrook facility. *See, e.g.*, *id.* at ¶¶ 286-88 and 290-92 (generally alleging that Griffith entities, including Micro-Biotrol, breached various duties through their operation of the Willowbrook facility via negligent and improper ownership, maintenance, training, and control and that those breaches proximately caused the underlying injuries).

41. Thus, the Pollution Exclusion does not apply at all or at least does not apply to claims arising from permitted emissions. *Indem. Ins. Co. of N. Am. v. Silver Creek Pig, Inc.*, No.

12

13-CV-1440, 2015 WL 1910019, at *7 (C.D. Ill. Feb. 13, 2015) (holding that duty to defend triggered by similar allegations that "underlying defendants, breached various duties through their negligent and improper ownership, maintenance, training and control" and declining to apply pollution exclusion).

42. Moreover, and separate and distinct from the permitted-emissions doctrine, the "sudden and accidental" exception to the Pollution Exclusion reinstates coverage here. Illinois courts hold that this sudden and accidental exception is ambiguous and construed against the insurer and in favor of the insured such that the exception applies whenever the alleged harmful discharge is unintendedly or unexpectedly harmful — even if the alleged discharges occurred over several years.

43. In that vein, plaintiffs in the Underlying Litigation repeatedly allege that there were negligent or "unintended" alleged leaks of dangerously high levels of EtO, in turn resulting in alleged injuries to the plaintiffs. *See, e.g.*, 4th Am. Master Compl. ¶¶ 290-92 (generally alleging that Griffith entities, including Micro-Biotrol, negligently breached various duties through their operation of the Willowbrook facility via negligent and improper ownership, maintenance, training, and control and that those breaches proximately caused the underlying injuries); *see also id.* at ¶ 230(a)-(f) (alleging that Sterigenics U.S. allegedly negligently breached certain duties, which led to "unintended leaks, spills, or emissions").

44. Thus, "at least some counts in the underlying complaint are devoid of any allegation" that any defendant "intended or expected to build and maintain" a facility that "directly caused such injuries to its surrounding neighbors." *Silver Creek Pig, Inc.*, 2015 WL 1910019 at *7. Consequently, even if the Pollution Exclusion were triggered (and it is not given

13

the allegations of permitted emissions), the sudden and accidental exception would reinstate coverage and obligate National Union to defend and indemnify Sterigenics U.S.

### E. National Union improperly denied coverage.

45. Sterigenics U.S. recently became aware of the existence of the Policies when Griffith produced them in discovery in the Underlying Litigation.

46. In February 2021, soon after becoming aware of the Policies, Sterigenics U.S. tendered the Underlying Litigation to National Union for defense and indemnity coverage.

47. In April 2021, National Union responded to Sterigenics U.S.'s initial tender letter, denying coverage based on the above-detailed insured status and pollution exclusion grounds.

48. In May 2021, Sterigenics U.S. responded to National Union's initial coverage denial with a detailed rebuttal and explanation, supported by case law, as to why National Union was obligated to defend and indemnify Sterigenics U.S. against the Underlying Litigation.

49. In response, National Union retained outside insurance coverage counsel, who responded with a letter dated June 25, 2021 confirming that National Union would not defend or indemnify Sterigenics U.S. against the Underlying Litigation.

50. Consequently, declaratory relief is necessary to resolve the parties' disagreement.

## COUNT I
## Declaratory Judgment
## Duty to Defend

51. Sterigenics U.S. incorporates by reference the allegations contained in paragraphs 1 through 50 of this Complaint as if fully rewritten here.

52. Pursuant to 28 U.S.C. § 2201, Sterigenics U.S. is entitled to a declaration by this Court of the parties' rights and obligations under the Policies.

53. An actual and justiciable controversy exists between Sterigenics U.S. and National Union concerning the parties' rights and obligations under the Policies.

54. The issuance of declaratory relief will terminate the existing controversy between Sterigenics U.S. and National Union.

55. Under the Policies, National Union agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury… to which this insurance applies, caused by an occurrence." National Union further agreed that it "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent… [until] the applicable limit of [National Union's] liability has been exhausted by payment of judgments or settlements." In other words, National Union's duty to defend is in addition to the Policies' limits and exists until and unless the limits are exhausted by payments of judgments or settlements.

56. The plaintiffs in the Underlying Litigation allege that they suffered bodily injury allegedly caused by, and seek to recover damages from, Sterigenics U.S. and/or its predecessors.

57. As detailed above, Sterigenics U.S., as the successor by merger to Micro-Biotrol Company, qualifies as a named insured under the Policies.

58. As also detailed above, the Pollution Exclusion does not apply to the allegations in the Underlying Litigation under Illinois law.

59. Accordingly, Sterigenics U.S. is entitled to an order declaring that National Union is obligated to defend Sterigenics U.S. against the Underlying Litigation until and unless the Policies' limits are exhausted by payments of judgments or settlements.

## COUNT II
### Declaratory Judgment
### Duty to Indemnify

60. Sterigenics U.S. incorporates by reference the allegations contained in paragraphs 1 through 59 of this Complaint as if fully rewritten here.

61. Pursuant to 28 U.S.C. § 2201, Sterigenics U.S. is entitled to a declaration by this Court of the parties' rights and obligations under the Policies.

62. An actual and justiciable controversy exists between Sterigenics U.S. and National Union concerning the parties' rights and obligations under the Policies.

63. The issuance of declaratory relief will terminate the existing controversy between Sterigenics U.S. and National Union.

64. The plaintiffs in the Underlying Litigation allege that they suffered bodily injury allegedly caused by, and seek to recover damages from, Sterigenics U.S. and/or its predecessors.

65. Under the Policies, National Union agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury… to which this insurance applies, caused by an occurrence."

66. As detailed above, Sterigenics U.S., as the successor by merger to Micro-Biotrol Company, qualifies as a named insured under the Policies.

67. As also detailed above, the Pollution Exclusion does not apply to the allegations in the Underlying Litigation under Illinois law.

68. To the extent Sterigenics U.S. is found liable in whole or in part to any of the plaintiffs in the Underlying Litigation or settles any such claims, National Union would be obligated to indemnify Sterigenics U.S. against any such liability or settlement.

69. Accordingly, Sterigenics U.S. is entitled to an order declaring that National Union is obligated to indemnify Sterigenics U.S. against the Underlying Litigation.

## COUNT III
## Breach of Contract

70. Sterigenics U.S. incorporates by reference the allegations contained in paragraphs 1 through 69 of this Complaint as if fully rewritten here.

71. The Policies are enforceable contracts.

72. Under the Policies, National Union agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury… to which this insurance applies, caused by an occurrence." National Union further agreed that it "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent…"

73. By improperly denying defense and indemnity coverage for the Underlying Litigation, National Union materially breached the terms of the Policies.

74. Because of these breaches, Sterigenics U.S. suffered damages in excess of $75,000.

## STERIGENICS U.S.'s PRAYER FOR RELIEF

WHEREFORE, Sterigenics U.S. prays this Court for the following relief:

a) On Count I, an order declaring that National Union is obligated to defend Sterigenics U.S. against the Underlying Litigation (including all the individual plaintiffs' cases consolidated for discovery and pretrial purposes);

b) On Count II, an order declaring that National Union is obligated to indemnify Sterigenics U.S. against the Underlying Litigation (including all the individual plaintiffs' cases consolidated for discovery and pretrial purposes);

c) On Count III, monetary damages in an amount to be proven at trial but which in any event exceed $75,000;

d) The reasonable costs and attorneys' fees that Sterigenics U.S. incurs here;

e) Prejudgment and postjudgment interest at the maximum rates permitted by law; and

f) Such other or further relief that this Court deems just and proper.

Respectfully submitted,

/s/      *Jill B. Berkeley*

JILL B. BERKELEY (ARDC# 0184233)
ANDREW G. MAY (ARDC# 6299444)
PAUL WALKER-BRIGHT (ARDC# 6226315)
NEAL GERBER & EISENBERG LLP
2 North LaSalle Street, Suite 1700
Chicago, IL 60602
(312) 269-8000
(312) 269-0836
jberkeley@nge.com
amay@nge.com
pwalkerbright@nge.com


K. JAMES SULLIVAN (*pro hac vice* forthcoming)
MATTHEW A. CHIRICOSTA (*pro hac vice* forthcoming)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
KJSullivan@Calfee.com
MChiricosta@Calfee.com

*Attorneys for Plaintiff, Sterigenics U.S., LLC*

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Sterigenics demands a trial by jury of all issues triable of right by jury.

/s/ Jill B. Berkeley
Jill B. Berkeley

*One of the Attorneys for Plaintiff, Sterigenics U.S., LLC*