**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sterigenics, U.S., LLC, | |
| Plaintiff, | Case No. 21-cv-4581 |
| v. | |
| National Union Fire Insurance Company Of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |

| | |
|---|---|
| Griffith Foods International, Inc., et al., | |
| Plaintiffs, | Case No. 21-cv-6403 |
| v. | |
| National Union Fire Insurance Company of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this insurance coverage dispute, Plaintiff Sterigenics U.S., LLC and Plaintiffs Griffith Foods International, Inc. and Griffith Foods Group, Inc. have brought separate but related lawsuits against their insurer, National Union Fire Insurance Company of Pittsburgh, P.A. Plaintiffs seek judgments declaring that National Union owes them duties to defend and indemnify them in an underlying

action pending in Illinois state court. Sterigenics and the Griffith Plaintiffs have moved for partial judgment on the pleadings, requesting a judgment that National Union owes them a duty to defend. The Griffith Plaintiffs have also moved for judgment on their claims for breach of the duty to defend and estoppel. National Union has cross-moved for judgment on the pleadings. For the reasons explained below, this Court grants Sterigenics' and the Griffith Plaintiffs' motions as they pertain to the duty to defend, denies the Griffith Plaintiffs' motion as to estoppel, and denies National Union's motions except as it pertains to estoppel.

## I. Background

This Court accepts as true the following facts from the amended complaint in the Sterigenics case and the complaint in the Griffith case. *See Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Because Plaintiffs' complaints contain similar allegations and concern the same insurance policies, this Court will sometimes cite to one complaint for a proposition that applies to both Plaintiffs. Unless otherwise indicated, citations to docket numbers refer to filings in Sterigenics' case.

### A. Underlying Litigation and the Policies

In Illinois state court, multiple plaintiffs have sued several defendants, including two of the Plaintiffs here—Sterigenics and Griffith Food International, Inc., formerly known as Griffith Laboratories U.S.A., Inc. (hereinafter Griffith Labs). [15] ¶¶ 13, 16. The underlying litigation, entitled *In re: Willowbrook Ethylene Oxide Litigation*, is currently pending in the Circuit Court of Cook County, Illinois. [15-1].

In the (operative) fourth amended complaint, the underlying plaintiffs allege that they suffered bodily and personal injuries as a result of exposure to discharges of ethylene oxide (EtO) from sterilization facilities Sterigenics currently owns in Willowbrook, Illinois. [15] ¶ 14. The fourth amended complaint serves as the master complaint for hundreds of actions which the state court consolidated for pretrial and discovery purposes; its allegations concern each named plaintiff. *Id.* ¶ 14 & n.2.

The underlying plaintiffs assert that, in 1984, Griffith Labs "purposely directed" that an EtO sterilization facility be located in the plaintiffs' residential community, knowing the facility would endanger the community's health and safety; the plaintiffs also assert that Griffith Labs operated the facility for the next fifteen years without adequately protecting the plaintiffs from the facility's carcinogenic emissions. [15-1] ¶ 7. Griffith Labs operated the Willowbrook facility "[d]uring certain times prior to May 14, 1999," according to the underlying complaint. *Id.* ¶ 24.[1] The underlying complaint also alleges that "Defendant Sterigenics U.S., under its current name and previously under other names, operated EtO sterilization facilities at 7775 Quincy Street in Willowbrook, Illinois . . . and 830 Midway Drive in Willowbrook, Illinois, continuously and at all relevant times." *Id.* ¶ 22. The underlying complaint asserts state-law claims against Sterigenics and Griffith Labs for negligence, negligent training, negligent supervision, willful and wanton conduct, strict liability, civil battery, and public nuisance. [15-1].

---

[1] Prior iterations of the underlying complaint—the second and third amended complaints—named Griffith Foods Group Inc., the other Plaintiff in the Griffith suit (hereinafter Griffith Foods). Griffith [1] ¶¶ 19, 23. Griffith Foods is formerly known as Griffith Laboratories, Inc. *Id.* ¶ 1.

3

### B.    Policies' Provisions

The parties' dispute centers around two commercial general liability policies that National Union insures. [15] ¶ 17. Policy number GLA-945-70-58RA was effective from September 30, 1983 to September 30, 1984; policy number GLA-194-00-11RA was effective from September 30, 1984 to September 30, 1985. *Id.*

The Policies' insuring agreement provides coverage for "bodily injury" or "property damage":

> The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

[25-1] at 6; [25-2] at 12. Exclusion (f) of the Policies—the Pollution Exclusion—states:

> Coverage A and B are subject to exclusion (f), which precludes coverage for:
>
> [] bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

[25-1] at 6; [25-2] at 12.

4

The Policies also provide coverage for "personal injury," as follows:

Personal Injury and Advertising Injury Liability Coverage

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent. . .

'Personal injury,' in relevant part, means injury arising out of one or more of the following offenses committed during the policy period of the following offenses committed during the policy period:

* * *
2.      wrongful entry or eviction or other invasion of the right of private occupancy;

[25-1] at 7; [25-2] at 6.

The Policies contain an endorsement stating that the term "Named Insured"

means:

[T]he organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded and *[sic]* newly acquired or formed company shall terminate within sixty days of its acquisition of *[sic]* formation unless reported to the company within said sixty days.

[25-1] at 16; [25-2] at 15.

Item 1 of the Policies' declarations pages identifies "Griffith Laboratories, Inc."

and "Griffith Laboratories U.S.A., Inc." (the Griffith Plaintiffs, under their former names) as the named insureds. *Id.* ¶ 20.

### C.  National Union Denies Coverage

In February 2021, Sterigenics tendered the underlying litigation to National Union for defense and indemnity coverage. [15] ¶ 52. National Union denied coverage on the grounds that Sterigenics is not insured under the Policies and that the Pollution Exclusion precludes coverage. *Id.* ¶¶ 53, 55. National Union similarly denied coverage to the Griffith Plaintiffs after they provided notice to it of the third amended underlying complaint. Griffith [1] ¶¶ 31, 34.

After National Union denied coverage, Sterigenics and the Griffith Plaintiffs brought separate suits against National Union in this district; the Sterigenics case was initially assigned to this Court. Upon National Union's unopposed motion, this Court deemed the suits related and the Executive Committee reassigned the case to this Court. [30].  In its amended complaint, Sterigenics seeks a judgment declaring that National Union possesses a duty to defend (Count I) and a duty to indemnify (Count II), as well as damages resulting from National Union's alleged breach of the Policies (Count III). [15] ¶¶ 57–82. The Griffith Plaintiffs assert claims for breach of contract based on National Union's refusal to defend (Counts I and II); they also seek declaratory judgment ordering National Union to defend and indemnify and estopping National Union from asserting coverage defenses (Counts III and IV). Griffith [1] ¶¶ 49–78.

Sterigenics moves under Rule 12(c) for partial judgment on Counts I and III,

as to National Union's duty to defend, [24]; National Union cross-moves for entry of judgment on all counts against Sterigenics, [31]. In the Griffith case, the Griffith Plaintiffs move pursuant to Rule 12(c) for judgment on Counts I and II for breach of contract with respect to the duty to defend and on Counts III and IV for a declaration that National Union has a duty to defend and that National Union is estopped from raising coverage defenses. Griffith [15]. National Union cross-moves against the Griffith Plaintiffs for judgment on all counts. Griffith [23].

## II.    Legal Standard

Rule 12(c) permits a party to move for judgment solely on the pleadings. Fed. R. Civ. P. 12(c). Pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020). This Court reviews Rule 12(c) motions under the same standards as a motion to dismiss under Rule 12(b)(6). *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021); *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Accordingly, this Court takes all facts pleaded in the amended complaint as true and draws all reasonable inferences and facts in favor of the nonmoving party. *Mesa*, 994 F.3d at 867.

## III.    Analysis

Before addressing the parties' legal arguments, this Court notes that all parties agree that Illinois law applies to the construction of the Policies. Under Illinois law, the interpretation of an insurance policy, like any other contract, is a question of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir.

7

2021). This Court construes insurance policies as a whole, "giving effect to every provision if possible." *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 21-2448, --- F.4th ----, 2022 WL 2068256, at *1 (7th Cir. June 8, 2022) (quoting *Paradigm Care & Enrichment Center, LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022)). Policy terms "that are 'clear and unambiguous' must be given their 'plain and ordinary meaning.'" *Mashallah*, 20 F.4th at 319 (quoting *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019)).

### A.     The Duty to Defend

This Court first considers whether National Union owes Sterigenics and the Griffith Plaintiffs a duty to defend in the underlying lawsuit. Illinois law "recognizes that the insurer's duty to defend arises when the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions." *Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, 447 (7th Cir. 2022) (internal quotation omitted). The duty to defend is generally broader than the duty to indemnify "because it arises in cases of arguable or potential coverage," while the duty to indemnify "arises only in circumstances of *actual* coverage." *Id.* (quoting *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). To determine whether insurer's duty to defend has arisen, the Court compares the allegations of the underlying complaint to the policy language. *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2022 WL 954603, at *3 (N.D. Ill. Mar. 30, 2022) (citing *Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756, 761 (Ill. App. Ct. 2013)). This is known as the "eight corners rule," meaning that the duty to

8

defend depends on a comparison between the four corners of the insurance policy and the four corners of the complaint for which defense is sought. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579–80 (7th Cir. 2021).

The duty to defend arises where the "allegations of the underlying complaint potentially assert a claim within the liability coverage of the policy." *Id.* at 580; *see also Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021) ("If the facts alleged in the complaint fall within, or potentially fall within, the policy coverage, the insurer must defend the insured."). This Court resolves any doubts about the duty to defend and liberally construes policy terms and the underlying complaint's allegations in the insured's favor. *Am Bankers*, 3 F.4th at 327; *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021).

### 1. Named Insured

Initially, there is no dispute that the Griffith Plaintiffs qualify as "named insureds" under the Policies. National Union argues that Sterigenics fails to qualify as an insured under the Policies and therefore cannot avail itself of their benefits. This Court disagrees; Sterigenics is a "named insured" for the purposes of National Union's duty to defend.

Both Policies contain an endorsement providing that the term "Named Insured" means:

> [T]he organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other

liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability.

[15] ¶ 18. Item 1 of the Policies' declarations pages identifies Griffith Labs as one of the named insureds. *Id.* ¶ 20. Thus, under the Policies' plain language, any subsidiary of or any other company acquired or formed by Griffith Labs also qualifies as a named insured under the Policies.

The underlying fourth amended complaint's allegations trigger Sterigenics' status as a named insured because it attempts to hold Sterigenics liable for its own and its predecessor's acts. The complaint alleges that on "October 4, 1984, Griffith Labs formed a nominal corporate subsidiary, Micro Biotrol Company (MBC)," [15-1] ¶ 105. This allegation establishes that MBC is also a "named insured" under the Policies due to its status as a subsidiary of Griffith Labs. The underlying complaint next alleges that:

> 22. "Defendant Sterigenics U.S., under its current name and previously under other names, operated EtO sterilization facilities at 7775 Quincy Street in Willowbrook, Illinois . . . and 830 Midway Drive in Willowbrook, Illinois, continuously and at all relevant times.
>
> 23. Sterigenics U.S.'s predecessors who operated the Willowbrook facilities include: Micro-Biotrol Company, Micro-Biotrol, Inc., Griffith Micro Science, Inc., IBA S&I, Inc., and Sterigenics EO, Inc. Through a series of acquisitions, mergers, and name changes, Sterigenics U.S. has assumed the liabilities of these predecessor entities for their respective involvement in the operation of the Willowbrook facilities. (Sterigenics U.S. and its predecessors are referred to collectively herein as 'Sterigenics U.S.')

[15-1] ¶¶ 22, 23. Read in combination, these allegations establish that Sterigenics became the successor entity to MBC, a named insured, through a series of corporate

transactions, including by acquisition, merger, and name change. The allegation that Sterigenics is MBC's successor raises at least the "possibility" that Sterigenics is covered as a "named insured." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 816 (7th Cir. 2010) (quoting *Health Care Industry Liability Ins. Program v. Momence Meadows,* 566 F.3d 689, 696 & n.9 (7th Cir.2009)); *see, e.g.*, *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 829 F.3d 509, 515 (7th Cir. 2016) (concluding that, under a reading of the underlying complaint, that a party qualified as a named insured).

This conclusion is supported by general principles of corporate law. Once "a merger is established, the successor corporation takes on the obligations and liabilities under the insurance policies." *Knoll Pharm. Co. v. Auto. Ins. Co.*, 167 F. Supp. 2d 1004, 1010 (N.D. Ill. 2001); *see also Kaleta v. Whittaker Corp.*, 583 N.E.2d 567, 570 (Ill. App. Ct. 1991) (noting that "the general rule is that a corporation that merges with another corporation takes on the latter corporation's obligations and liabilities"); *accord Cont'l Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 361 (8th Cir. 2021) (noting that, under Minnesota law, "a surviving corporation may assert claims under insurance policies issued to an acquired company for pre-merger liabilities of the acquired company, even though the survivor was not named on the policy.") (quotation omitted). Similarly, "a corporation that simply changes its name retains the rights and liabilities it possessed prior to the identity switch." *Gen. Elec. Bus. Fin. Servs. Inc. v. Hedenberg*, No. 10 C 5094, 2011 WL 1337105, at *2 (N.D. Ill. Apr. 7, 2011).

11

National Union argues that whether Sterigenics qualifies as an insured cannot be determined by the underlying complaint allegations and that "numerous fact issues" preclude judgment on this issue. [32] at 10–16. To that end, National Union dedicates much of its briefing questioning whether Sterigenics, in fact, is a corporate successor of MBC, and whether it in fact inherited MBC's insurance protections. These arguments are misplaced because "the duty to defend is gauged by the allegations of the complaint," and "what the facts subsequently show is immaterial." *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 75 F. Supp. 3d 833, 841 (N.D. Ill. 2014) (quoting *In re Country Mut. Ins. Co.*, 889 N.E.2d 209, 210 (Ill. 2007)), *aff'd*, 829 F.3d 509 (7th Cir. 2016). Even if the underlying complaint's allegations "are groundless, false or fraudulent, the insurer is obligated to defend." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 581 (7th Cir. 2021) (quoting 14 Couch on Insurance § 200:20). The Seventh Circuit has emphasized that "the bar to finding a duty to defend is low." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 722 (7th Cir. 2015). The underlying complaint's allegations raise at least the possibility that Sterigenics constitutes a "named insured" under the Policies as MBC's successor.

## 2. Bodily Injury

Next, there is no dispute that the operative fourth amended complaint in the underlying litigation alleges a covered "bodily injury" as defined under the Policies.

The Policies provide:

The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

12

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

[25-1] at 6; [25-2] at 12. The underlying complaint seeks damages from Griffith Labs and Sterigenics based on allegations that they caused the underlying plaintiffs to breathe excessive and dangerous amounts of EtO, causing them serious—and sometimes fatal—diseases or conditions. [15-1] ¶ 13. These allegations plainly trigger "bodily injury" coverage under the Policies—a point that National Union concedes. [32] at 6–7; Griffith [28] at 1.

### 3. Pollution Exclusion

Although National Union concedes that the underlying fourth amended complaint alleges "bodily injury" under the Policies, it argues that the Pollution exclusion excuses its obligation to defend Sterigenics and Griffith Labs from those allegations in the underlying litigation. An insured's claim can fall outside of a policy's coverage if it falls "*within* an exclusion." *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 868 (7th Cir. 2021). But "a decision to excuse an insurer's duty to defend based on an exclusionary clause in the contract 'must be clear and free from doubt.'" *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) (quoting *Evergreen Real Estate Servs., LLC v. Hanover Ins. Co.*, 142 N.E.3d 880, 887 (Ill. App. Ct. 2019)).

13

Exclusion (f) of the Policies—the Pollution Exclusion—states:

Coverage A and B are subject to exclusion (f), which precludes coverage for:

[] *bodily injury or property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*[.]

[25-1] at 6 (emphasis added); [25-2] at 12 (emphasis added).

In Illinois, courts restrict pollution exclusions to "only hazards traditionally associated with environmental pollution." *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 37 F.4th 440, 444 (7th Cir. 2022) (citing *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997)). National Union argues that the Pollution Exclusion bars coverage because the underlying fourth amended complaint asserts that the plaintiffs have sustained severe injuries stemming from traditional environmental pollution—namely, the emissions of EtO, a toxic and poisonous chemical that has been classified as a carcinogenic and a "priority pollutant." [15-1] ¶¶ 13, 44, 46, 128. This Court disagrees and concludes that the Pollution Exclusion is inapplicable for two reasons.

First, the Pollution Exclusion is ambiguous as to whether it applies to permitted emissions like the ones alleged in the underlying complaint. In *Erie Insurance Exchange v. Imperial Marble Corp.*, the Illinois Appellate Court construed a similar pollution exclusion to the one here barring coverage for bodily injury of property damage "arising out the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." 957 N.E.2d 1214,

1220 (Ill. App. Ct. 2011) (internal quotation marks omitted). The policy in *Imperial Marble* defined "pollutants" as any "solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical, and waste." *Id.* at 1220–21. The insured argued that the alleged emissions it made did not qualify as traditional environmental pollution because those emissions were made pursuant to a permit issued by the Illinois Environmental Protection Agency (IEPA). *Id.* at 1221. Reasoning that pollution exclusions have "potentially limitless application," the appellate court found the pollution exclusion "arguably ambiguous as to whether the emission of hazardous materials in levels permitted by an IEPA permit constitute traditional environmental pollution excluded under the policy." *Id.* at 1221 (internal quotation omitted). Thus, construing the ambiguity in favor of the insured, the court held that the pollution exclusion did not apply and that the insurer owed the insured a duty to defend. *Id.*; *see also Country Mut. Ins. Co. v. Bible Pork, Inc.,* 42 N.E.3d 958, 961, 970 (Ill. App. Ct. 2015) (finding a similar pollution exclusion ambiguous as to whether it applied to emissions from a hog factory which operated under state regulations and permits).

The same reasoning applies here. The underlying fourth amended complaint alleges that the IEPA issued Griffith Labs a two-year permit, beginning in July 1984 (during the first Policy period) and expiring on July 31, 1986 (after the expiration of the Policies' periods). [15-1] ¶¶ 57–58. According to the underlying complaint, the IEPA permit made Griffith Labs responsible for "sterilization processes for the six chambers for which it received a permit," "emissions of EtO

15

and other volatile organic materials from the facility," and "ensuring that its emissions and emission controls were compliant with local, state and federal law." *Id.* ¶ 60. The underlying complaint similarly attempts to hold Sterigenics liable for negligence due its management of the Willowbrook facilities, including for its emission of "massive and unnecessary amounts of" the permitted "EtO into the air from the Willowbrook facilities." *Id.* ¶ 220. As in *Imperial Marble*, this Court finds that the Pollution Exclusion is ambiguous as to whether emission of EtO under an IEPA permit qualifies as a traditional environmental pollution under the Policies. Because the Pollution Exclusion's application is not "clear and free from doubt," it cannot excuse National Union from its defense obligations. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (quoting *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir. 1995)).

In addition, even if EtO emissions qualify as the type of traditional environmental pollution recognized under Illinois jurisprudence, the Pollution Exclusion itself contains an exception that reinstates coverage for Sterigenics. That is, the Pollution Exclusion "does not apply if such discharge, discharge dispersal, release or escape is sudden and accidental." [25-1] at 6; [25-2] at 12. In interpreting a similar "sudden" and "accidental" pollution exception to a pollution exclusion, the Illinois Supreme Court has held that the term "sudden" in pollution exclusions to be ambiguous and has construed the term "in favor of the insured to mean unexpected or unintended." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). Additionally, courts construe the term "accident" in the context of

16

CGL policies as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688–89 (7th Cir. 2008) (quoting *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.,* 804 N.E.2d 601, 605 (Ill. App. Ct. 2003)); *see also Westfield Ins. Co. v. Zaremba Builders II LLC*, No. 19-CV-00794, 2022 WL 614938, at *5 (N.D. Ill. Mar. 2, 2022) (using the same definition). The underlying fourth amended complaint triggers the "sudden and accidental" exception to the Pollution Exclusion for Sterigenics because it alleges that Sterigenics' negligence resulted in "unintended leaks, spills, or emissions." [15-1] ¶¶ 225, 230. The "unintended" nature of the alleged leaks, spills, or emissions fit squarely within the definitions of "sudden" and "accidental," as interpreted by Illinois courts.

National Union counters that the underlying complaint, read as a whole, paints the picture that the "EtO emissions were a common, recurring, expected and intended aspect of the business," rather than sudden and accidental occurrences. [32] at 23. True, the underlying plaintiffs allege that the Willowbrook facilities' failure to control emissions resulted in "unnecessary emission of EtO into the surrounding community of at least 25,000 pounds each year of at least 400,000 pounds between 1984 and 1999," and that the facilities "operated 24 hours a day, emitting toxic, cancerous gas on a steady and continuous basis." [15-1] ¶¶ 86, 141. These allegations suggest, as National Union argues, that the emissions were routine and recurring, and not "sudden" nor "accidental." But "if several theories of

17

recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 774 (7th Cir. 2016) (quoting *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)). Here, in addition to alleging that EtO emissions were continuous and routine, the underlying plaintiffs also allege that the emissions were unintended and unexpected. The latter theory is all that is needed to trigger the "sudden and accidental" exception.

National Union's citation to *Fruit of the Loom, Inc. v. Travelers Indemnity Co.* does not alter this Court's conclusion. *Contra* [38] at 6. In *Fruit of the Loom*, the Illinois appellate court considered the "sudden and accidental" exception in the context of an insured's discharge of liquid polychlorinated biphenyls (PCBs) in the mid-1950s to the late 1970s. 672 N.E.2d 278, 280 (Ill. App. Ct. 1996). There, the court held that the exception did not apply where the undisputed facts showed that, even though accidental spills occurred, those accidents occurred with regularity and were expected by the insured in the "ordinary course of business." *Id.* at 287–88. An employee testified, for example, that "PDB drippage occurred all the time; it was an ongoing problem to keep certain areas clean." *Id.* at 281. Unlike this case, the *Fruit of the Loom* court determined coverage on a full evidentiary record and determined that, although accidents occurred, they were not unexpected. Here, in contrast, this Court construes only the allegations of the underlying complaint in considering the duty to defend and it does so liberally in favor of coverage. *Am Bankers*, 3 F.4th at

327; *Zurich Am. Ins.*, 990 F.3d at 1078. Because the underlying complaint contains allegations that Sterigenics is liable for "unintended leaks, spills, or emissions," [15-1] ¶¶ 225, 230, it triggers the "sudden and accidental" exception to the Pollution Exclusion for Sterigenics.

### 4. Personal Injury Coverage

Sterigenics and the Griffith Labs also contend that National Union must defend them under the "personal injury" coverage provision of the Policies, to which the Pollution Exclusion does not apply. [25] at 26; Griffith [25] at 14–16. National Union does not dispute that the Pollution Exclusion is inapplicable to "personal injury" coverage. *See generally* [32]; [38]. Instead, National Union disputes that the underlying complaint does not allege any covered "personal injury."

The personal injury coverage provision provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory. . . .

> "Personal injury," in relevant part, means injury arising out of one or more of the following offenses committed during the policy period of the following offenses committed during the policy period:

> \* \* \*
> 2. wrongful entry or eviction or other invasion of the right of private occupancy;

[25-1] at 7; [25-2] at 6.

This Court agrees with Plaintiffs that the underlying fourth amended complaint alleges injuries that fall under the definition of "personal injury" under

the Policies. Under Illinois law, private nuisance claims trigger "personal injury" coverage because they entail a "wrongful entry or eviction or other invasion of the right of private occupancy." *Admiral Indem. Co. v. 899 Plymouth Ct. Condo. Ass'n D&kK Real Est. Serv. Corp.*, No. 16 C 5085, 2017 WL 345559, at *7 (N.D. Ill. Jan. 24, 2017) (quoting *Great Am. Ins. Co. of N.Y. v. Helwig*, 419 F. Supp. 2d 1017, 1025 (N.D. Ill. 2006)). A private nuisance "is a substantial invasion of another's interest in the use and enjoyment of his or her land." *Martinez v. City of Chicago*, 534 F. Supp. 3d 936, 953 (N.D. Ill. 2021) (quoting *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 204 (Ill. 1997)). Allegations "that the defendant's conduct threatens the plaintiff's land with environmental contamination . . . sufficiently state a nuisance claim." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 825 (N.D. Ill. 2014); *see also Lewis v. 300 W. LLC.*, No. 18-CV-50186, 2019 WL 4750313, at *11 (N.D. Ill. Sept. 30, 2019) (allegations that environmental contamination substantially interfered with the plaintiffs' reasonable use, development, and enjoyment of their property adequately stated a private nuisance claim).

The underlying complaint asserts that Sterigenics and Griffith Labs have threatened the underlying plaintiffs' land with environmental contamination. In Counts VII, the underlying plaintiffs assert that Sterigenics' "use and emission of EtO from the facilities . . . caused those who lived and worked in the area surrounding the facilities to inhale high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer." [15-1] ¶ 253. Similarly, Count XVIII alleges that the activities of "Griffith

Labs . . . caus[ed] those who lived and worked in the area surrounding the facilities to inhale high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer." *Id.* ¶ 318. These allegations that Sterigenics and Griffith Labs have threatened the underlying Plaintiffs' enjoyment and use of land with environmental contamination state a private nuisance claim and thus fall under the definition of "personal injury" under the Policies. *See, e.g., Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, N.E.2d 223, 231 (Ill. App. Ct. 1996) (concluding that facts alleging "the unauthorized seepage and migration of gasoline onto the property of an adjoining neighbor[] were sufficient to bring the underlying complaint within the personal injury coverage of the policies").

National Union argues that the underlying complaint does not trigger "personal injury" coverage because the underlying plaintiffs have labeled Counts VII and XVIII "public nuisance" and not "private nuisance." [32] at 24. Legal labels are not dispositive. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (noting that the court's inquiry on a duty to defend claim "is based on the allegations in the complaint, not the legal labels attached to them"). Further, when the "nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one." *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1282–83 (Ill. App. Ct. 2005) (quoting Restatement (Second) of Torts § 821C, Comment *e,* at 96 (1979)). As discussed, the underlying complaint contains

allegations that Sterigenics and Griffith Labs emitted carcinogenics onto the plaintiffs' private property. Thus, even though the underlying plaintiffs have labeled those counts as "public nuisance" claims, the facts they have alleged also "potentially give rise to" a private nuisance claim, and thus fall within the Policies' "personal injury" coverage. *Santa's Best Craft*, 611 F.3d at 346; *see Liberty Mut.*, 33 F.4th at 447 (instructing that the duty to defend arises when the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions).

National Union also argues that the Policies preclude coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured. [32] at 28; *see* [25-1] at 7 (excluding from coverage "personal injury or advertising injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured"); [25-2] at 6 (same). This argument is unpersuasive. The underlying complaint does not allege any statutory violation; it alleges common law causes of action. *See generally* [15-1]. To be sure, the underlying fourth amended complaint contains a reference to the Illinois Environmental Protection Act. *See* [15-1] ¶ 72 (alleging that "Griffith Labs was obligated to comply with the Illinois Environmental Protection Act and its supporting regulations, which prohibited 'the emission of any contaminant into the environment so as to cause or tend to cause air pollution in Illinois. . .'"). But the Act is not the basis for any of the plaintiffs' claims. National Union has not demonstrated that an exclusion to the "personal injury"

coverage provision applies. In sum, the underlying complaint's private nuisance allegations trigger the "personal injury" coverage provisions in the Policies, thus providing another independent basis for National Union's duty to defend. *See Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 884 (7th Cir. 2017) (observing that "where insurer has duty to defend against at least one count of underlying lawsuit, it must then defend against all counts").

### 5. National Union Owes a Duty to Defend

As explained above, the underlying fourth amended complaint alleges bodily injury and personal injury that triggers coverage under the Policies, and National Union has not met its burden in demonstrating that any exclusions apply. Accordingly, this Court concludes that National Union owes Sterigenics and Griffith Labs a duty to defend based on the underlying fourth amended complaint.

The Griffith Plaintiffs also point out that although Griffith Foods is not named as a defendant in the fourth amended underlying complaint, it was named as a defendant in a prior iteration of the underlying complaint—the second amended underlying complaint. Griffith [19] at 15–16. Griffith Foods argues that, at a minimum, National Union owes it defense costs for the time that Griffith Foods was on the hook in the underlying case. *Id.* But this argument is undeveloped (indeed, Griffith Foods devotes only two sentences to it), and neither side engages in any substantive analysis regarding National Union's defense obligations under prior versions of the underlying complaint; instead, the parties' briefs focus on National Union's defense obligations under the fourth amended complaint. "When a party has

more than ample opportunity to present an argument but raises it in a perfunctory manner, it should not expect more than perfunctory consideration from the district court." *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). Because the parties have not sufficiently raised these issues before this Court, this this Court denies without prejudice Griffith Foods' request for defense costs arising from prior versions of the underlying complaint.[2]

### B. Estoppel

The Griffith Plaintiffs also ask this Court to enter judgment declaring that National Union is estopped from asserting policy defenses to coverage. National Union, for its part, requests a determination that estoppel is inapplicable.

Under Illinois law, when "an insurer learns of a claim against its insured, the ball is in the insurer's court." *Title Indus.*, 853 F.3d at 891. When a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and the insurer takes the position that the policy does not cover the underlying complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment of non-coverage. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019). If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer breaches its duty to defend and is estopped from asserting policy defenses to

---

[2] This Court also notes that, although Griffith Foods relies on the second amended complaint in arguing that National Union owed it a defense, the insurer's duty to defend only arises upon "actual notice of the underlying suit." *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 505 (Ill. 1998). Here, Griffith Foods alleges that National Union received actual notice when it received the *third* amended complaint, not the second amended complaint. Griffith [1] ¶ 31. Thus, to the extent National Union owes Griffith Foods any defense costs, those costs ostensibly would arise only after Griffith Foods provided notice to National Union of the *third* amended complaint.

coverage. *Santa's Best Craft*, 611 F.3d at 349; *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999); *see also Title Indus.*, 853 F.3d at 892 (observing that an "insurer that breaches its duty to defend and abandons its insured is estopped from later invoking policy defenses to indemnity"). To avoid estoppel, the insurer must take one of the above steps—defend under a reservation of rights or seek declaratory judgment—"within a reasonable time of a demand by the insured." *Nautilus Ins. Co. v. Bd. of Directors of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 733 (7th Cir. 2014) (quoting *Korte Constr. Co. v. Am. States Ins.,* 750 N.E.2d 764, 770 (Ill. App. Ct. 2001)).

On January 29, 2021, the Griffith Plaintiffs provided National Union with notice of the underlying suit and provided copies of the (then-operative) third amended complaint. Griffith Compl. [1] ¶ 31.[3] On February 17, 2021, National Union acknowledged receipt of the notice and requested copies of the Policies, which the Griffith Plaintiffs provided the same day. *Id.* ¶ 32. National Union ultimately denied coverage on October 12, 2021. *Id.* ¶ 33. Shortly after, on November 30, 2021, the Griffith Plaintiffs filed this declaratory judgment action, and shortly after that, on January 31, 2022, National Union answered and asserted affirmative defenses. *See* Griffith [1]; [11]. In its answer and affirmative defenses, National Union explicitly denies coverage and "requests that this Court find and declare that Plaintiffs are not entitled to any relief." [11] at 11. Thus, about one year transpired between the

---

[3] The parties assume, without discussing, that the third amended complaint's allegations were sufficiently similar to the fourth amended complaint's allegations, such that if the latter triggered National Union's duty to defend, the former would have, too.

Griffith Plaintiffs' tender of the underlying litigation and National Union's request for a declaration of non-coverage. *See Sentinel Ins. Co. v. Walsh Constr. Co.*, 298 F. Supp. 3d 1165, 1176 (N.D. Ill. 2018) (noting that to avoid estoppel, "an insurer need not be the one to have filed the action in which it seeks a declaration of no coverage").

Illinois courts have generally applied one of three standards to measure an insurer's promptness in requesting declaratory judgment. *L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 432 (Ill. App. Ct. 2006); *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 893 (N.D. Ill. 2018). One approach deems a declaratory judgment action timely requested "as long as it was filed before the underlying lawsuit ends," and another approach focuses on whether the insurer requested declaratory judgment before trial or settlement was imminent. *Id.* The third approach asks simply whether "the insurer filed the declaratory action within a reasonable amount of time after receiving notification of the underlying action." *Allied World Specialty Ins. Co. v. John Sexton Sand & Gravel Corp.*, 2019 IL App (1st) 182468-U, ¶ 66. Here, it is undisputed that the underlying suit remains ongoing, and there is nothing in the present record suggesting that trial or settlement is imminent. Thus, National Union clearly discharged its duty to act with reasonable promptness under the first two approaches.

Under the third approach, which is the one now favored by Illinois courts, the Court asks whether National Union requested declaratory judgment within a "reasonable time" of being on notice of the underlying suit, regardless of the posture of the underlying suit. *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 960, 846

N.E.2d 974, 987 (Ill. App. Ct. 2006); *see also Zurich Specialties London Ltd. v. Vill. of Bellwood*, No. 07 CV 2171, 2011 WL 248444, at *10 (N.D. Ill. Jan. 26, 2011) (noting that although the "Illinois Supreme Court has not yet decided the issue, this court agrees with those courts that have adopted the third approach"); *Sentinel*, 298 F. Supp. 3d at 1175 ("This Court agrees with these decisions . . . that the proper inquiry is whether Sentinel sought a declaratory judgment of no coverage within a reasonable time."). This Court finds that National Union did not unreasonably delay in requesting declaratory judgment. Illinois courts have not adopted a bright line rule as to what constitutes a "reasonable time." *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 894 (N.D. Ill. 2018). In *South Shore Iron Works*, the district court found that a thirteen-month delay between an initial tender and filing a declaratory judgment action was reasonable because of the "protracted procedural history" of the underlying suit—including that it involved multiple amended complaints, one of which was filed just four months prior to the insurer's filing of a declaratory judgment action. 341 F. Supp. 3d at 894.

Similarly, there is protracted history here in the underlying case. And while "delays of *over a* year have been found unreasonable by courts employing the reasonable time test," *Zurich*, 2011 WL 248444, at *10 (emphasis added), the delay here between the time the Griffith Plaintiffs provided actual notice of the underlying suit and when National Union first requested a declaration of non-coverage was just about one year. Particularly given the complex nature of the underlying dispute (which involves hundreds of consolidated complaints) and the fact that the

underlying dispute is nowhere near completion nor settlement, this Court concludes that National Union sought declaratory relief within a reasonable time of receiving actual notice of the underlying suit. Therefore, this Court denies the Griffith Plaintiffs' motion as to estoppel, and grants National Union's motion as to estoppel.

## IV. Conclusion

For the reasons explained above, this Court concludes that National Union owes Sterigenics and Griffith Labs a duty to defend the underlying fourth amended complaint and that National Union is not estopped from asserting coverage defenses. As a result, this Court grants Sterigenics' partial motion for judgment on the pleadings and denies National Union's cross-motion for judgment; and grants in part the Griffith Plaintiffs' partial motion for judgment on the pleadings, and grants in part National Union's cross-motion for judgment. This Court sets a telephonic status hearing for August 25, 2022 at 10:00 a.m. Parties shall call 866-434-5269; access code 3751971. Counsel shall be prepared to report on what substantive issues remain in this case, given that this Court has adjudicated National Union's defense obligations (at least with respect to the underlying fourth amended complaint), and questions regarding National Union's duty to indemnify are unripe and subject to dismissal pending the outcome of the underlying litigation. *See Am. Bankers*, 3 F.4th at 331.

E N T E R:

Dated: August 3, 2022

_____

MARY M. ROWLAND
United States District Judge